Case number 22-1298, Kyle Richards et al. v. Thomas Perttu. Oral argument is not to be seen. 15 minutes per side. Mr. Ballinger, if you'd like to make some opening remarks. Thank you, your honor. May it please the court. My name is Scott Ballinger. I'm the director of the Appellate Litigation Clinic at the University of Virginia School of Law. And it's my pleasure to introduce Mr. Sean Gray and Ms. Lauren McNerney, who will be presenting argument for Mr. Richards. Mr. Gray will handle the opening argument and Ms. McNerney any rebuttal. Thank you. Great. Thank you. May I proceed? Yes, good morning. You're saving five minutes for your co-counsel? Yes, that's correct. Good morning, your honors, and may it please the court. The judgment below should be vacated for two reasons. The magistrate judge's fact-finding violated the Seventh Amendment and the district court shouldn't have denied meaningful Article III review to Mr. Richards just because, as a pro se plaintiff, he didn't understand the need to order a transcript. Now, turning to the Seventh Amendment question, any reasonable reading of history and precedent only leads to one conclusion. That a jury, not a judge, should decide questions about exhaustion when they are intertwined with the merits. Now, I think the exhaustion can be determined by a judge when it's not factually intertwined because it is a threshold issue of judicial administration. The usual rule for threshold issues of judicial administration in every other context, both jurisdictional and quasi-jurisdictional, that we've been able to find indicates that when it's intertwined with the merits, it needs to be heard by a jury. That's the case. What about how do you deal with the Seventh Circuit decision of Pavey v. Connolly in 2008 by Judge Posner? Absolutely, Your Honor. There's a few problems with Pavey that I think are worth highlighting. Pavey allows the judge to make a non-binding factual determination about exhaustion, and then if there was exhaustion, it goes to the jury. But there's a few problems. First, it calls what this court has identified as a serious Seventh Amendment constitutional question, and it reduces it to what it calls peculiarity. Seventh Amendment isn't a peculiarity. It's quite important. And second, it doesn't do the sort of constitutional analysis that the Supreme Court has required in Markman to determine the contours of the Seventh Amendment, where you look at history and precedent to determine if the judge or the jury should be deciding this particular factual question. And here's the most important problem, is that if the judge ultimately dismisses for a failure to exhaust an intertwined question, it never gets heard by the jury. And ultimately, this determination is binding on the jury because the jury doesn't get to hear it. And that might be okay for something like class certification or evidence, but when you're ultimately making a dismissal, that can't be reconciled with the Seventh Amendment. Let me ask this. Does your analysis apply as it relates to venue or personal jurisdiction, those type of things, assuming that those are also intertwined with the merits? Yes, Your Honor, it does. The Supreme Court, the circuits, including this court and Fireman's Fund, the districts, Moore's Federal Practice, and Wright & Miller's have all said in a number of jurisdictional and quasi-jurisdictional contexts, including sovereign immunity, venue, personal jurisdiction, amount in controversy, in all of these contexts, that ultimately, if the question is intertwined with the merits, it's going to go to the jury. So are you saying that if, as here, if your client alleges something that's intertwined with the merits, that he gets to skip the PLRA exhaustion requirement? No, Your Honor, it's not skipping the exhaustion requirement. It's ultimately moving the decision maker from the judge to the jury. The jury is still adjudicating the exhaustion question. It's just intertwined with the merits in that case. But isn't the whole idea of the PLRA to avoid getting the federal courts involved in every prisoner litigation case by first having a screening at the grievance level in the prison? And you'd be avoiding that, wouldn't you? You wouldn't be avoiding it, Your Honor. And the reason that you wouldn't be avoiding it is because ultimately, if the jury finds facts that the plaintiff didn't exhaust, or that exhaustion wasn't available, or that the prison guards didn't thwart it, then the rest of the case shouldn't proceed. Ultimately, the jury is the factual predicates on which the judge can ultimately decide whether or not the case can continue. But if you have to have a jury trial, you're moving the whole procedure into federal court as opposed to letting it first be resolved at the prison level, aren't you? Your Honor, only in the sense that the jury needs to decide the facts that are intertwined with the merits. And the PLRA's policy preferences shouldn't be accorded the same weight as the where the questions are actually intertwined with the merits. What's your best case that directly supports your position here? I think it's Land v. Dollar, Your Honor, which is a Supreme Court case which indicated that a sovereign immunity question that was bound up with the merits ultimately needed to be decided by the jury. I also think that this court's decision in Fireman's Fund is instructive on the same matter. And I also PLRA exhaustion is a threshold issue of judicial administration. There's this case you cite. Was that a PLRA case? Neither Land v. Dollar nor Fireman's Fund or PLRA cases, but Land v. Dollar and Fireman's Fund are both actually jurisdictional questions. Land v. Dollar is a sovereign immunity question and Fireman's Fund is a jurisdictional question about amount and controversy. And I think the strongest case for judicial fact-finding would be in the jurisdictional context. But ultimately, even in that case, the Supreme Court says that the jury right prevails in that instance. And I think the same thing is certainly true here because the PLRA is a waivable affirmative defense. It shouldn't be treated any differently than any other one. Whatever the policy justifications are in the PLRA for resolving exhaustion issues early, would Congress be able to override the Seventh Amendment jury trial right? Not in this case, Your Honor. I don't think it would in large part because of the Seventh Amendment, the precedent in common law analysis make clear that the jury trial right can't be abrogated in this instance. And it's a narrow subset of cases that are ultimately going to be intertwined. It's not going to be every single case. But I think in these cases, Congress can override the Seventh Amendment. Well, let me ask you this. Is there an analogy to, I'm thinking of the summary judgment procedure. I mean, let's say you've got a, oh, I don't know, you know, employment discrimination case where obviously you can get a jury trial on factual disputes. But if always the employer seems to move for summary judgment, saying there's no genuine issue, you know, disputed material fact, and many of those cases are disposed of on summary judgment. Well, couldn't the same thing happen here in this Prison Litigation Act context? Certainly, Your Honor. If there's no genuine dispute of material fact, then that wouldn't invade the jury's fact-finding prerogative. But that's the problem here is ultimately there is a genuine dispute of material fact that bears on both this exhaustion question and on the merits question, whether Mr. Richards filed these grievances in the first place. And then if Mr. Pertut tore them up, I mean, these go to both the heart of his First Amendment retaliation claims. All right. Well, there was an evidentiary hearing wasn't there by the magistrate judge on this and didn't he find that almost all the grievances were not completed, that Mr. Pertut was not present 24-7 at the prison, so he couldn't have been tearing up all these grievances. I mean, it seemed like at the hearing, there was some real doubt on whether he had, your client had presented, even made out a prima facie case. Well, Your Honor, ultimately, I think the problem here is the magistrate judge shouldn't constitutionally be the decision-maker. If you look at the reasoning that he's doing, he's calling one witness unconvincing, another lacked credibility. He called Richard's claims far-fetched. These are the types of determinations that the Supreme Court has said the jury is ultimately the best arbiter of. Ultimately, the jury is the one that should be making credibility determinations and should be drawing inferences. Isn't that what a judge often does in summary judgment decisions, having to decide whether it really is a genuine dispute or whether it's so far-fetched that no reasonable juror would have found the facts in favor? And that's only if there is no genuine dispute of material fact, Your Honor. But ultimately, I think it's clear Mr. Richards was able to put up several witnesses that did advocate for his position. There's a clear, genuine dispute of material fact here. I do want to touch just a bit on the common law analysis. Oh, I'm sorry, Your Honor, can I ask you how? So I had a couple of questions. One is you keep talking about the jury decides. Even in your construct, doesn't the judge still have a role in determining exhaustion? In other words, is your point that the facts go to the jury, but then does the judge have to still make some determination about exhaustion? Yes, Your Honor. Ultimately, the jury will decide the factual questions and the judge can, based on their factual determinations, make the decision about whether or not exhaustion was satisfied or not. So the judge still has a role. Your point is just on the fact-finding that has to be made by the jury. If the judge disagrees with the fact-finding, does the judge say there was a failure to exhaust if the jury sort of answers interrogatories that suggest there was? Or does the judge have to follow that and then can post-trial the judge and her judgment notwithstanding the verdict or something along those lines? Your Honor, I think that that might be the case in the same way that a judgment notwithstanding the verdicts will impose a Seventh Amendment issue. I don't think this would pose a Seventh Amendment issue, but I think it's ultimately, it's the same sort of questions about how allowing the jury to ultimately find the facts. And if the judge finds that they're so egregiously wrong that there's no legal certainty, for instance, then that might be the case. With my time remaining, I just want to touch quickly. No, I was going to ask you one more question. Sorry. There's this question about overlap, which I think is a tricky one, because there's always some overlap. Probably in almost every case, if there's a threshold question, there can at least be some measure of overlap with a merits question. So do you have a test for that? Or is there a specific case we should look to that best describes what overlap is enough that it it raises the Seventh Amendment issue? Yes, Your Honor, my time's over. Could I just briefly answer your question? Yeah, please keep going. Yes. I think the Southern District of New York, who has been applying our rule that we're asking for for about a decade, they have a pretty helpful test. It's that factual issues in the threshold issue or threshold level and the merits level overlap such that it requires one prior fact to decide the disputed issue that must also be count over the other and ultimately make the merits determination. If I can ask just to follow up on something that Judge Gilman asked. Obviously, in 1983 cases, you're entitled to a jury trial. But as Judge Gilman was mentioning, we have the summary judgment rule, Rule 56. So I guess my question is, in your opinion, does Rule 56 violate the Seventh Amendment? No, Your Honor, it doesn't. Because ultimately, as you said, there's no genuine dispute of material fact. But if there is a genuine dispute of material fact, and the judge still decides to decide the case, then I think that would pose a Seventh Amendment issue. But summary judgment that's defined in the federal rules certainly isn't unconstitutional. So I guess I don't understand what's different between the PLRA and Rule 56. I guess that's why I'm trying to find a distinction as to how one sort of violates the Seventh Amendment, but the other doesn't. We're not saying that the PLRA exhaustion requirement violates the Seventh Amendment, Seventh Amendment, Your Honor. Ultimately, what we're saying is when there are questions about exhaustion that are intertwined with the merits, then the jury, not the judge, is the one that is going to have to decide them in order to vindicate the Seventh Amendment right. That's the same sort of analysis that we do in every other jurisdictional and quasi-jurisdictional context when these issues overlap. If there are no further questions. Yeah, you had one other point you wanted to make. Do you want to just take 30 seconds to make it in case it jogs any questions? Yes, certainly, Your Honor. I just want to touch on the Article 3 point that we raised in the 28J letter. The district court held that it couldn't consider Mr. Richard's objections to the magistrate's fact-finding because there wasn't a transcript. But I think this court's decision in Hill v. Deryron makes clear that that's not constitutionally sufficient. The court needs to review the parts of the transcript that are under attack in order for them to get a meaningful Article 3 review. Any questions from the panel? Okay, great. Well, we'll hear from your co-counsel as well. And now we'll go to your friend on the other side. Thank you. Thank you, Your Honor. Is it Mr. Smith? Yes, Your Honor. Good morning, Your Honors. May it please the court. Assistant Attorney General Joshua Smith on behalf of Defendant Appley, Mr. Perttu. One of the things I want to address at the outset was something that counsel for Mr. Richard stated that Congress cannot abrogate the right to a jury trial. And I don't think that's accurate because Congress has done that before. If you look at the U.S. Supreme Court's decision in Lehman v. Naxxion, which I'm probably mangling, by the way, which is 453 U.S. 156 at 161, the Supreme Court noted that Congress, in fact, has done exactly that for tort actions against the United States. So the fact is when Congress creates a cause of action, a civil cause of action, Congress can determine the forum and procedure for that cause of action. That's a sovereign immunity question? That is a tort action against the United States. But it's whether the U.S. is waived sovereign immunity. That's a constitutional principle as well, right? So we'd have to be balancing out. So isn't that a little different than what we're talking about today? The principle is the same in that when Congress creates a cause of action. Prior to 1983, there was no cause of action against the United States for an alleged or against a public entity for an alleged in that case, whether Congress is waived, whether the government's waiving its ability to invoke sovereign immunity. And we would question whether the statute does that. What the statute does is state the court for which the United States has waived immunity is brought in a district court without a jury. Yeah. And so what I think that shows is that Congress can very much do that. And here, I think the focus should be on the text and the history and the purpose of the Prison Litigation Reform Act. When this act was adopted. Let me ask this, if you don't mind. So are you saying that Congress can take away the right to a jury trial in the 1983 action, take away the PLRA component? Is that your position? I'm not going to necessarily wade into that because I don't think it's necessary for this appeal. But I wanted to indicate that when Congress does create a cause of action, it also creates the forum for that cause of action. Whether that would apply universally to 1983 actions, I think is probably beyond the scope of my argument. But I think the Supreme Court has indicated that, yes, Congress can create, when it creates a cause of action, Congress can specify the forum in which that action takes place. So here under the PLRA, what Congress did is it had several goals in mind, several purposes. And Supreme Court discussed these pretty extensively in Porter. Are we talking about the text? Are we talking about the purpose you've defined from the legislative history or something else? The purposes of the PLRA, Your Honor. Well, I would be looking at the purposes of the law versus the text of the law. I mean, Judge Posner kind of does that in his opinion. But to me, that was not a virtue. It was more advice. Understood. Well, I think when you look at Porter v. Nussel, the court isn't just looking at this is what we think the purpose of the PLRA is in a vacuum. It's looking at the text of the act. So let's take a look at the text we're talking about here specifically. No action shall be brought with respect to prison conditions until such administrative remedies available are exhausted. And that's the text we're looking at. And that text is where we're going to discern what congressional intent or purpose was. I mean, the only the only the only limitation. I mean, we're not saying that there's we're not saying we wouldn't be saying if we ruled against you, we wouldn't be saying Congress can't have an exhaustion requirement. We wouldn't be saying that a rule of 56 level, if there's no dispute of material fact, that a judge can go ahead and find the case exhausted and dismiss it. So the only thing your friends are asking for is a ruling where there's overlap. And I would also have a question of what counts as significant overlap, whether it's enough overlap between the exhaustion question and the merits that you have to have a jury decide that. And that traces back to Supreme Court cases where they discussed instances where there's claims of law and claims of equity and a claim of equity on a jury trial. Right. But the court was very concerned about the equitable claim not going first because then you would have making rulings that might impinge the jury trial right on the legal claim. So that's all we're talking about. We're not we're not we wouldn't be undoing the right to assert exhaustion and the ability to argue it. I understand that. But functionally, what they're asking for is essentially to ask this court to overrule that overrule. And that's the wrong term, Your Honor, to effectively negate what the congressional purpose was is held by the U.S. Supreme Court enacting the PLRA. The purpose is to decrease the number of prisoner lawsuits, to return the grievance process to prison administrators and to reduce the burden on federal courts. Simply put, if this court rules that you get a jury trial every time a plaintiff credibly alleges that the facts of exhaustion and the underlying merits are intertwined, we will have a jury trial in virtually every case under the PLRA. And that very much undercuts the purpose of the PLRA. But isn't that and that's but that's arguably required by the Seventh Amendment. And so your argument is that the Congress has Congress has lawfully. Curtailed or limited that Seventh Amendment right through the PLRA. Well, I would say the Seventh Amendment right doesn't attach here. But yes, as a sub argument, I think Congress has the ability to define the scope and the the forum for an action that Congress specifically creates. And the Congress has done that with again, claims against the United States. Is your position that the prisoners would not be able to file for prison violations in the absence of the PLRA? They would be able to file under 1983, Your Honor. The PLRA essentially is limiting the scope of of remedies and actions under 1983 for incarcerated persons. So for example, prior to the PLRA, prisoners did file lawsuits. And the reason the PLRA was was enacted was federal courts and quite frankly, state attorney general offices and probably the US Department of Justice were overwhelmed with the sheer volume of prisoner lawsuits and the exhaustion requirement was specifically put in there so that it wouldn't be a. It would again return the grievance process to admit prison administrators, but reduce that burden on federal courts. And if you have a jury trial when there is an alleged intertwining between the merits and the exhaustion that does very much undermine what Congress intended to do. And I think you get what Judge Posner warned about in the Pavey case. And I do want to note that in the Albino case out of the Ninth Circuit, I believe 2014, they effectively adopted the Pavey rationale as well. So the two circuits that have specifically addressed that issue, when you have those that those alleged intertwined facts have specifically adopted the same rule that at the threshold, the judge is going to decide whether the prisoner litigant has exhausted his or her administrative remedies. That's a threshold issue. But to the extent that the judge decides, and it can be on a motion for summary judgment, or the prisoner can request an evidentiary hearing on that. But if the judge decides that the prisoner did not exhaust his or her administrative remedies, then the case would end because that prisoner had no right to be a federal court to begin with. And the prisoner would have to go back and go through those administrative steps at the prison. If the court determines that the case should go forward, the jury would not later be bound by those decisions. In fact, I believe Posner noted, the jury probably wouldn't even know about the prior fact finding on the exhaustion issue. And the alternative to that is you either have a series of mini jury trials on all of these predicate issues, particularly exhaustion, which undercuts the purpose of the PLRA. Or if you have it all at the end, that is you have a jury trial at the end on the merits and also on the exhaustion issue. It certainly doesn't decrease the burden on federal courts, because you have to go through the whole motion practice discovery on the merits and discovery on exhaustion process. And I do want to say plaintiff's counsel indicated that it would be, I believe, a minimal burden to have a jury trial as opposed to a bench trial on exhaustion. Having done both of those, I would vociferously disagree with that. Doesn't this happen with jurisdiction too? Sometimes jurisdictional is, you know, cases where we don't have jurisdiction, but sometimes we have to have a trial on jurisdictional questions when they overlap significantly with the merits. And so all the same, you know, features, you think they're, you know, you think they're unattractive features. All the same features are true in that instance where these difficult questions have to go through all these different rounds and go to the jury. But that's that's pretty much black letter law, isn't it? That sometimes jurisdictional issues also end up sort of before a jury for fact finding. They certainly can, Your Honor. Yes. So why is that? I mean, if that's well accepted, why couldn't the same be true for what's less, you know, affirmative defense? It's not even jurisdictional question. It is correct. It's an affirmative defense. And I think the courts have been very clear that it's not a jurisdictional question. Again, I mean, I think it does very much go back to the purpose and intent and the text of the PLRA. And I think it's telling that given that the PLRA has been law for nearly 30 years now, that there's not a single circuit court case stating that when there's an alleged intertwining between exhaustion and the underlying merits of the case, that that's an issue for the jury. Now, we only have one case that really goes the other. We have one main case that goes the other way. Excuse me? We have we have the Seventh Circuit case that goes the other way. Isn't it just kind of an until there's not a lot of cases on the topic? There are not a lot of circuit cases on the topic, but I mean, one to zero, I think it's one. I mean, the fact that zero on one side is being only one on the other side. So it's just kind of largely an open question. Well, there are two on the other side. I think if you look at the Albino decision out of the Ninth Circuit, it does adopt the Pavey reasoning from the Seventh Circuit. And what Albino did in the Ninth Circuit is there was an early ruling Wyatt, which said you have that the bench there will be a bench trial on the issue of exhaustion. That was Wyatt. Wyatt was eventually overruled by Albino, which put in effect the Pavey test, which is the one we've been discussing extensively. So it is two circuits. But the fact that no other circuits have held the way that Mr. Richards is arguing, I think, is telling because this is not a statute that was passed yesterday. This is not that esoteric of an issue. And he only points to a handful of unpublished district court cases, nearly all of which are out of New York state. And that's simply not precedent to show that this circuit shouldn't follow the very pragmatic. Can I go back to the jurisdiction question? The parade of horribles you brought out, isn't that also true in the jurisdictional context? And isn't jurisdiction, aren't the concerns about federal courts shouldn't be getting involved and shouldn't be wasting time and shouldn't be even hearing a case if we don't have jurisdiction. We have to set all that aside in cases where the jurisdictional facts overlap with the merits facts and we have to take this to the jury. And it feels like all the same concerns you have about federal practice and the demands on the courts are true even maybe more so in the jurisdictional context, yet we still give all these issues to the jury if they're the fact finder. I would argue that they're a little bit different in this context, Your Honor, because of the sheer volume of prisoner cases and prison litigation, which again, is the entire purpose of why Congress enacted the PLRA. I started my career as a law clerk right at the tail end of when cases were grandfathered in prior to the Michigan version of the PLRA. And it was an incredibly high volume of cases. It put a huge burden on the court system not to mention prison systems and states that have to administer correctional systems. So I would say this is not the same at all because it's not that difficult to make allegations that there's a sufficient intertwining between exhaustion and the underlying merits of the case. So I think it's not something where we're looking for a case here or there where you have a real jurisdictional issue on which you need findings of fact. This will be an issue on which district judges throughout every district court in every state in the Sixth Circuit will be conducting one or more jury trials in every prisoner litigation case. And yes, I do think- There's a couple of safeguards. So one is Rule 56, right? There might not be a genuine issue of material fact. But the other one is overlap. And maybe the overlap requirement does a lot of work here in that not every- There's always some degree of overlap, I suppose, but there has to be a meaningful amount of overlap. How much work should that part of the inquiry be doing? And what do you think the test would be? Assuming we disagreed with you on your first level point that the issue shouldn't go to the jury, what safeguarding does the overlap requirement do? And should we be looking pretty strictly at when there is or isn't overlap? Well, with all due respect, I don't think that that overlap inquiry is going to be a very good safeguard at all. But it needs to be a very strict and very stringent test because I think it's fair to say that every litigant that has an exhaustion issue, and that's every litigant under the PLRA, and keep in mind, it's not just- See, my time's expired. If you- No, please keep going. And this is a key point, I think, in this area that is important to understand my answer. A litigant can have a half dozen claims under the Eighth Amendment, the First Amendment, or some combination thereof, but each single one of those claims has to be exhausted. So, you can have an exhaustion issue in A, but not B, in C, and not D. So, you have to have a stringent test to determine whether these issues are intertwined. And I don't think you needed a jury to make the fact-finding on that, and I very much think it would undercut the PLRA. But to the extent that you decide to go against the Ninth Circuit and the Seventh Circuit and the PLRA, I would urge this court to adopt the most stringent possible test because otherwise, it's simply going to overwhelm district courts, it's going to overwhelm state attorney general's offices and prisons, and quite frankly, eventually, it'll come up to this court, and there'll be a significantly higher caseload on that as well. Because I think it's- I just- you're a little bit over, but let me see if Judge Gilman or Judge Mathis have any other questions. I have a question. In the Seventh Circuit Pavey case, your opposing counsel criticizes it in that, hey, but if the district judge decides that exhaustion resolves the facts in favor of the government, that's the end of the case. There won't be any subsequent jury trial to decide because it won't go beyond that. So, you know, is that rationale of Judge Posner hold up or not? I think the rationale holds up because in a prefatory issue like this, deciding that an exhaustion is not a tremendously difficult issue, although it can be. I mean, there was a full day bench trial here, but that- I think Posner is correct because that's exactly what the PLRA is designed to do, is to streamline this process. And I don't see that as being a problem in Judge Posner's decision. I think what Judge Posner wisely did is looked at the PLRA and looked at the Seventh Amendment and said, this is the most reasonable outcome when you look at the Constitution and the statute. But, I mean, Congress cannot overrule the Constitution. So, if the Seventh Amendment requires a jury trial of disputed material facts, can Congress override that with the PLRA? You know, as I stated earlier, I mean, I think that when Congress creates a cause of action, Congress has the right to create the forum for that cause of action. I mean, I understand that there's a distinction when we're talking about the waiver of sovereign immunity, that is a special case, but the Supreme Court's at least recognized this in principle. When a cause of action is created, in 1983, to be clear, it's a statute. It's an action Congress created that did not exist prior to that statute. And the PLRA was enacted some, I don't know, 120, 130 years after Section 1983. So, if you look at simple principles of statutory construction, and to the extent the Supreme Court agrees with me that Congress gets to create how a right is vindicated when it creates that right, then yes, the PLRA would control here. There wouldn't be a Seventh Amendment issue, and exhaustion would be purely an issue for the court to decide, either via an evidentiary hearing or on a motion for summary judgment under Rule 56. And my time's expired. I wanted to briefly discuss the transcript issue, but I understand the court would be indulging me at that point, and certainly does not have to. Let me just add, do either of my colleagues have any other questions? Well, I'd just like to hear quickly, what is your answer on the transcript issue? Yeah, really quickly. This court is very lenient in interpreting the pleadings of pro se parties, but the court's also been very clear on a number of occasions that pro se parties still need to follow the court rules. I'll just give you the site here. We're looking at N. Ray Edwards and Jordan V. Jabe, two cases from this court. Rule 72 says you have to secure, promptly secure a transcript. The litigant in this case didn't do that. The court didn't have a transcript. The court noted that he didn't move for a transcript until after he had filed his claim of appeal in this case. It was initially denied because he hadn't perfected his informa pauperis petition. When he did perfect it, he got the transcript. This is an error entirely on Mr. Richards. It's in the court rule, court rules that he's generally followed. So the notion that he didn't understand that I don't think is realistic and is contradicted by this court's case law. The Hill case is not on point at all because in the Hill case, those plaintiffs specifically objected to the lack of a transcript in their objections to the magistrate judge's rulings. Mr. Richards did not do that here. So this is not an error of proportions. This is an error on Mr. Richards' part that would have had no bearing anyways because reading the transcript, the magistrate judge made the exact right call. Thank you, Your Honor. I appreciate that. Sure. Thank you very much. And now we'll hear the rebuttal. May I proceed? Yes, please. Thank you, Your Honors, and may it please the court. Our friend on the other side's focus on the purposes of the PLRA is misplaced. It is the text of the Seventh Amendment, not the PLRA, that matters. Congress can't eliminate the right to a jury trial just because it created the cause of action. The Seventh Amendment guarantees jury fact-finding in any case that would have been considered an action of law in 1791. Indeed, the Supreme Court has held in City of Monterey that even though Congress created the cause of action for Section 1983, it is undisputably guaranteed a jury trial right under the Seventh Amendment. And so too here. Consider Markman. The relevant trial issue is PLRA exhaustion intertwined with the merits. This court need not consider the purposes of the PLRA if it finds that history and precedent provide a clear answer in this case, and both do. PLRA exhaustion intertwined with the merits necessarily denies factual allegations in the plaintiff's complaint. And at common law, a jury where the plaintiff requested it would always have been entitled to decide those factual disputes, even in jurisdictional and quasi-jurisdictional contexts where threshold issues are intertwined with the merits. Judicial- Actually, how do we know when something's intertwined enough that it has to go to a jury, or there's enough overlap? Certainly, Your Honor. We would point you to the Fifth Circuit's case in Allison v. Sitko, which a district court district of South Carolina has in particularly this context to make that decision. The Fifth Circuit there said that it's not just a matter of overlapping evidence, but of overlapping factual disputes necessarily determined by the jury on the merits issue. So the question you have to ask is whether or not the factual dispute related to PLRA exhaustion would necessarily need to be resolved to reach the merits question. And here- Go ahead. I mean, so whether these complaints were torn is certainly critical to the exhaustion issue, but it's not so critical to the merits question. The merits question is whether this abuse was occurring and whether the complaints were torn up might reveal motive or trying to cover someone's tracks for the ultimate wrongdoing. But the real question would be whether the ultimate wrongdoing occurred, whether there was sexual abuse occurring in the facility. So in some ways, the question that's so important to exhaustion isn't so, important to the merits question. Your Honor, we would note that Mr. Richards makes several merits claims, one of which is a First Amendment retaliation claim, not just his Eighth Amendment excessive force claim or his Fifth Amendment due process. And there, this court has held that there is an undisputed First Amendment right under Herron v. Harrison to file a grievance. The very question as to whether grievances are filed is a necessary factual dispute needed to be determined with respect to the exhaustion issue and also with respect to the First Amendment retaliation issue. And that's true for the factual dispute relating to whether or not Mr. Pertut allegedly destroyed Mr. Richards' grievances. That's also needed to be determined with respect to exhaustion and with respect to the adverse prong of the First Amendment retaliation claim. We think the fact that there are not many circuit, not many cases on this issue and the district court decisions within the Second Circuit's jurisdiction point to the fact that this will not arise often. True factual intertwinement is the exception, not the norm. And district courts are well equipped to apply an intertwinement limiting principle, which will not impose a significant burden in most cases. But we don't think that having a jury resolve these questions imposes a significant burden anyways. It's our understanding that even in claims in which a judge decides equitable claims, they routinely empanel advisory juries to make decisions about factual disputes. And that's consistent with what the Supreme Court has said with respect to the jury's functional considerations. That a jury, in emarkment itself, the Supreme Court said that making credibility determinations is, quote, the jury's forte. We see that language reflected in Liberty Lobby as well. But that's not the only constitutional issue this court need consider in this case. There's also a significant Article III defect. And that's because the district judge did not review the relevant portions of the evidentiary hearing that Mr. Richards made objections to. And under this court's precedent in Hill v. DeRiron, the district court was required to do so to provide meaningful de novo review. We think Mr. Richards clearly attempted to raise that issue when he tried to identify that the copy of the audio reserve should be kept in reserve in order at ECF 159, page 790 of the record. And so the district court should have reviewed those objections through the transcript. If this court has no further questions, we ask that you reverse. Thank you. Sure. Any questions from the panel? Okay. Well, great. Well, thanks to both sides. It was a very well-argued case. The case will be submitted. And a special thank you to the law clinic for accepting our appointment and being such zealous advocates for your clients. We appreciate it and wish you well this semester. And with that, I think we can adjourn court. This report is now adjourned. Counsel, you can both disconnect at this time. And, Marshall, if you can confirm disconnection once it occurs, please.